Mark Bradford
MARK BRADFORD, P.C.
299 12th Street
Brooklyn, New York 11215-4903
Telephone:  (347) 413-3287
Email: mb@markbradfordpc.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
BILL SMITH GROUP, INC., BSG HOLDINGS,      :
INC., and Q2A MEDIA SERVICES PRIVATE       :
LTD.,                                                                   :
                                                                          :
                                        Plaintiffs,         :        Index No.
                                                                          :
                        v.                                            :
                                                                          :        **VERIFIED COMPLAINT**
WILLIAM C. SMITH, OLD BSG, LLC, and       :
PUMPKINOMCPI, LLC,                                  :
                                                                          :
                                        Defendants.      :
------------------------------------------------------------ x

        For  their  complaint,  plaintiffs  Bill  Smith  Group,  Inc.,  BSG  Holdings,  Inc.,  and  Q2A

Media  Services  Private  LTD.  (collectively,  "**Plaintiffs**"),  appearing  through  their  undersigned

counsel,  against  defendants  William  C.  Smith  and  Old  BSG,  LLC  (collectively,  "**Smith**"),  and

PumplkinoMcPi, LLC, allege as follows:

        1.        This  is  an  action  for  damages  arising  from  defendants'  actions  in  the  course  of

Plaintiffs'  purchase  of  Bill  Smith  Group,  Inc.  (hereinafter,  the  "**Company**"),  effected  through

two  separate  stock  purchase  agreements  executed  three  years  apart,  to  which  all  plaintiffs  and

defendants (except for PumpkinoMcPi) herein were signatories:

a.  Stock Purchase Agreement, dated May 9, 2011 ("**2011 SPA**") pursuant to which plaintiffs BSG Holdings, Inc., and Q2A Media Services Private LTD. agreed to purchase 49.83% of the Company's shares from defendants Smith and Bill Smith Group, LLC (later known as Old BSG, LLC); and

b.  Stock Purchase Agreement, dated March 5, 2014 ("**2014 SPA**") pursuant to which plaintiffs BSG Holdings, Inc., and Q2A Media Services Private LTD. purchased all of the remaining shares in the Company from defendants Smith and Old BSG, LLC (formerly know as Bill Smith Group, LLC), and upon which transaction Plaintiffs finally assumed control over the Company.

2.      Upon assuming control of the Company after the 2014 SPA, Plaintiffs became aware of a pattern of fraudulent statements and/or omissions made by Smith throughout the purchase transactions, including, but not limited to, (a) materially misrepresenting the financial condition of the Company in the 2014 SPA, and (b) concealing self-dealing by two Smith-controlled entities contrary to express provision in the 2011 SPA.

3.      Accordingly, Smith is liable to Plaintiffs, individually or collectively, for: (1) securities fraud under 15 U.S.C. § 78j(b) and 17 C.F.R. 240.10b-5; (2) actual fraud; (3) constructive fraud; (4) breach of fiduciary duty; (5) negligent misrepresentation; and (6) unjust enrichment.

## PARTIES

4.      Plaintiff Bill Smith Group, Inc., is a corporation organized and operating under the laws of the State of New York, with its principal place of business currently located at 242 West 30th St. Suite 900, New York, New York 10001.  The Company is in the business of developing and marketing educational materials.  Prior to the 2011 SPA, the Company was

known as Bill Smith Studio, Inc.  Since the 2014 SPA, it has been wholly owned by plaintiff BSG Holdings, Inc.

5.     Plaintiff Q2A Media Services Private LTD. ("**Q2A Media**"), is a corporation organized and operating under the laws of the Republic of India, with a principal place of business at D-8, Level 2, Sector 3, Noida, Uttar Pradesh 201 301 INDIA.

6.     Plaintiff BSG Holdings, Inc., is a corporation organized and operating under the laws of the State of Delaware, and is a wholly owned subsidiary of Q2A Media.

7.     Upon information and belief, defendant William C. Smith is an individual residing at 27 Great Jones Street, New York NY 10012.

8.     Upon information and belief, defendant Old BSG, LLC, is a limited liability company organized and operating under the laws of the State of Delaware, with a principal place of business at 450 West 31st Street, 3rd Floor, New York NY 10001.  Prior to the 2014 SPA, Old BSG, LLC, was known as Bill Smith Group, LLC.

9.     Upon information and belief, defendant PumpkinoMcPi, LLC ("**Pumpkino**"), is a limited liability company organized and operating under the laws of the State of New York, with a principal place of business at 450 West 31st Street, 3rd Floor, New York NY 10001.  At all times relevant to this Complaint, the managing member of Pumpkino is or was defendant William C. Smith.  At certain times relevant to this Complaint, Pumpkino was the owner and lessor of the Company's premises when they were also located at 450 West 31st Street, 3rd Floor, New York, New York.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action contains claims for securities fraud under 15 U.S.C. § 78j(b) and 17 C.F.R. 240.10b-5.

This Court has supplemental jurisdiction over plaintiffs' state and common law claims pursuant to 28 U.S.C. § 1367(a).

11.     Acts and transactions complained of herein occurred in New York County.

12.     Plaintiffs' cause of action arose in whole or in part in New York County.

13.     Defendants reside, can be found, and/or regularly transact business in New York County.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

15.     As alleged herein, the Plaintiffs purchased all shares in Bill Smith Group, Inc. (the "**Company**") from Smith pursuant to two separate stock purchase agreements: (a) the 2011 SPA, dated May 9, 2011, in which plaintiffs BSG Holdings, Inc., and Q2A Media, acquired a large but still minority interest in the Company, and (b) the 2014 SPA, dated March 5, 2014, pursuant to which the Plaintiffs purchased all of the remaining shares in the Company and assumed control of the Company from Smith.

**A.      The Smith Control Period (2011-2014)**

16.     Plaintiff Q2A Media made its initial purchase of shares in the Company pursuant to the 2011 SPA.  At that time, Q2A Media created BSG Holdings, Inc., as a wholly owned subsidiary to hold the purchased shares in the Company, and which was also a signatory to the 2011 SPA.

17.     In the period between the 2011 SPA and the 2014 SPA, Smith retained control of the Company and its management (hereinafter, the "**Smith Control Period**"), while plaintiff BSG Holdings held a minority interest of just under fifty percent (50.0%).

18.    During the Smith Control Period, Smith owed duties of fiduciary responsibility both to the Company and to BSG Holdings as the sole minority shareholder of the Company.

19.    During the Smith Control Period, Plaintiffs did not have full access to the Company's books and records.

20.    During the Smith Control Period, the Company's business premises were located at 450 West 31st Street, 3rd Floor, New York, New York.

21.    During the Smith Control Period, the owner and purported lessor of the Company's business premises was defendant Pumpkino.

22.    During the Smith Control Period, the Company continued to pay rent to Pumpkino pursuant to such purported lease(s).

23.    Section 8.11 of the 2011 SPA stated, in relevant part, as follows:

> 8.11 <u>Amendment to Lease Agreement</u>. The [Company] shall enter into an amendment to its Lease Agreement (the "Lease Amendment") with PumpkinoMcPi LLC (the "Landlord"), an Affiliate of William C. Smith ("W. Smith"), covering the [Company]'s office space located at 450 West 31st Street, 3rd  Floor (the "Office"), consisting of approximately 10,000 square feet of space. The Lease Amendment shall (i) reduce the term so that it will expire on December 31, 2014 (the "Lease Termination Date"), and (ii) set the rental price at $22.00 per square foot plus utilities, subject to increase by any increased common charges. . . . .

24.    During the Smith Control Period, as only became known to the Plaintiffs in the period following Plaintiffs' gaining full control of the Company in 2014 when Plaintiffs gained access to the Company's books, the amendment of the sublease mandated by Section 8.11 of the 2011 SPA never occurred.

25.    During the Smith Control Period, Plaintiffs had no knowledge that the Company continued to pay rent on its premises to Pumpkino at the rate on the non-amended lease, resulting in overpayments to Pumpkino – a Smith-controlled entity – totaling $451,355.17.

26.     Moreover, during the Smith Control Period, the Company's premises were leased under two overlapping and inconsistent agreements: (1) a ten-year lease dated January 1, 2010, under which Pumpkino leased the premises to Bill Smith Group, LLC, a Smith-controlled entity distinct from the Company and the predecessor-in-interest to Old BSG, and (2) a separate sublease that expired by its terms on Dec. 31, 2011, and was never amended during the Smith Control Period, under which Pumpkino purported to lease the very same premises to the Company.

27.     During the Smith Control Period, Plaintiffs and their personnel were never authorized or responsible for producing the Company's financial statements, and never had sufficient access to the Company's accounting systems or bank accounts that would have allowed them to do so.

28.     In contrast, during the Smith Control Period, Smith and personnel that reported to him, including the Company's Chief Financial Officer(s), had full access to the Company's accounting systems and/or bank accounts, and had full authorization and responsibility with respect to the Company's financial statements.

29.     On at least one occasion during the Smith Control Period, Smith denied admittance to the Company's premises to Hanut Singh, the CEO of plaintiff Q2A Media, the sole owner of BSG Holdings, and also a director and the Chairman of the Board of the Company throughout the Smith Control Period.

30.     On or about July 2013, Smith hired Doug Sanderson  as CFO for the Company , without approval from Mr. Singh and/or the Company's board, as required under the Company's by-laws.

31.     During the Smith Control Period, both Smith and the Company's board authorized a full third party audit of the Company's books, but the audit was never completed due to Smith's failure to provide full disclosure of the Company's financials to the auditor.

**B.     Plaintiffs Purchase Controlling Interest In The Company (2014)**

32.     Notwithstanding the fraught relations between Plaintiffs and Smith during the Smith Control Period, Plaintiffs reasonably believed that their difficulties with respect to the Company's governance during the Smith Control Period would be ameliorated simply upon Plaintiffs gaining full control of the Company from Smith.  Accordingly, Plaintiffs and Smith proceeded to negotiate the 2014 SPA.

33.     Pursuant to the 2014 SPA, Plantiffs purchased all the shares in the Company that Smith had controlled following the 2011 SPA and, thereafter, Plaintiffs assumed control of the Company.

34.     Smith's representations with respect to the basic financial condition of the Company were a key inducement to BSG Holdings' purchase of Smith's remaining interest in the Company.

35.     Pursuant to Section 3 of the 2014 SPA, Smith made a number of representations and warranties to Plaintiffs with respect to the Company's financial condition.

36.     Subsection 3.1 of the 2014 SPA incorporates and references management-prepared financial statements of the Company as of and for the ten month period ended January 31, 2014, comprising, in part, the balance sheet as of such date (the "**Balance Sheet**") and the income statement for such ten month period (collectively, the "**2014 Statements**").  The 2014 Statements are appended as Exhibit D to the 2014 SPA, as well as incorporated by reference in the 2014 SPA itself.

37. Section 3.1.2 of the 2014 SPA states, in part, that the 2014 Statements "are complete and accurate and fairly present, in conformity with U.S. Generally Accepted Accounting Principles ("GAAP") applied on a consistent basis, the financial position of the [Company] as of the date thereof and the results of operations of the [Company] for the period reflected therein … ."

38. Section 3.1.3 of the 2014 SPA states, in part,

> To the knowledge of Smith, after reasonable inquiry, except as specifically disclosed, reflected or fully reserved against on the Balance Sheet, and for liabilities and obligations of a similar nature and in similar amounts incurred in the ordinary course of business since the date of the Balance Sheet, there are no Liabilities relating to the [Company] other than such that are not more in the aggregate to $10,000 or the Q2A Liabilities.

39. Section 3.1.4 of the 2014 SPA states, in part, "The Balance Sheet accurately reflects the outstanding Indebtedness of the [Company], in all material respects, as of the date thereof, other than any Q2A Liabilities."

40. Representations made in the 2014 Statements include the following (emphasis added):

> Bill Smith Studio, Balance Sheet – For period 10 - Jan 2014
>
> Liabilities:
>
> **Accounts Payables    $ 1,347,673.60**
>
> **Total Liabilities        $ 1,934,311.82**

41. The 2014 SPA incorporated management-prepared and certified statements as to the financial condition of the Company that materially misrepresented and failed to disclose that the Company had at least one million dollars less net working capital than Smith stated.

42. Directly contrary to the representations and warranties in Section 3 of the 2014 SPA, a comparison of the 2014 Statements with the Company's ledgers, including invoices, bills,

payments and payroll records, etc., demonstrated that the 2014 Statements (i) did not conform to US GAAP; (ii) substantially understated liabilities on the Balance Sheet and expenses on the Profit & Loss Statement; and (iii) provided a false and misleading picture of the Company's financial position as of, and for the period ending, 31 January 2014.

43.     If the Balance Sheet had been prepared in accordance with US GAAP, all revenues recorded in the Company's ledgers as of January 31, 2014, would also have had corresponding costs simultaneously recorded (whether or not such costs had been billed by vendors). In fact, many of the corresponding costs were not recorded or accrued in the 2014 Statements, thereby materially misstating the financial picture of the Company as of January 31, 2014.

44.     The "Accounts Payables" figure for the Company referenced in paragraph 40, *supra*, omits at least $ 303,041.51 in unreported invoicing as of the date of the report. Accordingly, the correct accounts payable figure would have been at least $ 1,650,714.11.

45.     The 2014 Statements also failed to include (a) unearned revenue totaling $ 302,039.22; (b) payable salary expenses totaling $ 361,000.00, and (c) payroll control expenses totaling $ 119,432.62.   Consequently, the correct Total Liabilities figure should have been $ 3,019,824.17.

46.     In sum, the 2014 Statements incorporated in the 2014 SPA misstated the Company's liabilities by a total of  $ 1,085,512.35, or more than fifty-six percent (56%).

47.     The misstatement of the Company's liabilities in the 2014 Statements resulted in an equivalent overstatement of then-current earnings and total equity in the same document, both of which were already deficits:

EQUITY (CAPITAL):

**Current Earnings - Y/E 3/31/14       $ − 393,538.55**

**Total Equity**                    **$ – 449,393.08**

48.     If correct figures were substituted for the misstated liabilities referenced above, they would have resulted in a Current Earnings figure referencing the additional deficit: $ –1,479,050.90.   As such, the true Total Equity figure was a far larger deficit totaling $ –1,534,905.43 which represents an overstatement of the Company's equity by over 241%.

49.     Consequently, Plaintiffs began their full stewardship of the Company when it was at least one million dollars poorer in net working capital than Plaintiffs had any reason to expect.

50.     This hidden deficit had a catastrophic impact on the Company's business over the remainder of 2014.   The million-dollar gap in expected net working capital resulted in an additional $4 million drop in revenue over the previous fiscal year as it impaired the Company's ability to service its existing customers let alone its prospects for acquiring new business.

51.     Moreover, during the Smith Control Period, Smith had been exacerbating the Company's financial difficulties by knowingly overpaying rent on the Company's premises to Pumpkino, as alleged above, while simultaneously failing to pay monies owed to many of the Company's vendors.

52.     Had Plaintiffs been apprised of the Company's actual condition at the time of the 2014 SPA, Q2A Media's shareholders would not have authorized Q2A Media and BSG Holdings to execute the 2014 SPA with Smith.

53.     Upon information and belief, Smith knew about both the overpayments and the grave condition of the Company during the Smith Control Period at the times he misrepresented or failed to disclose to Plaintiffs that the opposite was the case.

54.     It is impossible that Mr. Smith did not intentionally make the above-enumerated misstatements and material omissions in order to mislead the Plaintiffs and to induce them to

conclude the purchase of the entirety of the Company in 2014 when they would not have done so had they been in a position to know the facts at the time.

## LOSS CAUSATION

55.     As detailed herein, Smith made false and misleading statements and engaged in a scheme to deceive Plaintiffs and induce them to purchase the remaining shares in the Company by misrepresenting the condition of the Company.   As a result of these misrepresentations, Plaintiffs suffered economic loss and/or damages under the federal securities laws.

## NO SAFE HARBOR

56.     At no time did Smith or any of his agents make any statement during the relevant period that could be construed as a "Safe Harbor" warning.

57.     To the limited extent to which any of Smith's statements could be construed as "forward looking," Smith knew that each one was false and misleading when made.

## FIRST CLAIM FOR RELIEF
### (VIOLATION OF § 10(B) OF THE 1934 SECURITIES EXCHANGE ACT AND RULE 10B-5 AGAINST SMITH AND OLD BSG)

58.     Plaintiffs reallege the foregoing paragraphs 1 through 57 as if fully set forth herein.

59.     As alleged above, Smith misrepresented to Plaintiffs the true financial condition of the Company during the Smith Control Period, knew these representations to be false when Smith made them, and were made with the intent to deceive and defraud Plaintiffs and to induce them to enter into the 2014 SPA.

60.     Smith knew that Plaintiffs had no choice but to rely on these representations, given that, during the Smith Control Period, Plaintiffs had no independent access to the

Company's books and records documenting the Company's finances and no way to verify the correctness of the amounts reflected in the 2014 Statements.

61.     Plaintiffs, at the time the representations were made, did not know the truth, but believed Smith's representations to be true; relied upon them; and were induced to enter into the 2014 SPA.

62.     In full reliance upon the truth of the representations so made by Smith, Plaintiffs on or about March 5, 2014, contracted for the purchase of the shares in the Company held at that time by Smith.  Plaintiffs would not have agreed to enter into the 2014 SPA had they known that Smith's above-referenced representations with respect to the Company during the Smith Control Period were false.

63.     Smith violated §10(b) of the 1934 Act and Rule 10b-5 in that he:

    a.   Employed devices, schemes and artifices to defraud;

    b.   Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c.   Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs in connection with their sales of the Company's stock.

64.     Plaintiffs have suffered damages in that, in reliance upon Smith's misstatements, Plaintiffs entered into the 2014 SPA and assumed full control of the Company when they would not have done so at the time had Smith not made his misrepresentations.

65.     By reason of the foregoing, Smith is liable to Plaintiffs for damages in an amount to be determined at trial, but totaling not less than $ 5,085,512.35.

## SECOND CLAIM FOR RELIEF
### (ACTUAL FRAUD AGAINST WILLIAM B. SMITH AND OLD BSG)

66.     Plaintiffs reallege the foregoing paragraphs 1 through 65 as if fully set forth herein.

67.     As alleged above, Smith misrepresented to Plaintiffs the true financial condition of the Company during the Smith Control Period, knew these representations to be false when Smith made them, and were made with the intent to deceive and defraud Plaintiffs and to induce them to enter into the 2014 SPA.

68.     Smith knew that Plaintiffs had no choice but to rely on these representations, given that, during the Smith Control Period, Plaintiffs had no independent access to the Company's books and records documenting the Company's finances and no way to verify the correctness of the amounts reflected in the 2014 Statements.

69.     Plaintiffs, at the time the representations were made, did not know the truth, but believed Smith's representations to be true; relied upon them; and were induced to enter into the 2014 SPA.

70.     In full reliance upon the truth of the representations so made by Smith, Plaintiffs on or about March 5, 2014, contracted for the purchase of the shares in the Company held at that time by Smith.  Plaintiffs would not have agreed to enter into the 2014 SPA had they known that Smith's above-referenced representations with respect to the Company were false.

71.     By reason of the foregoing, Smith is liable to Plaintiffs for damages in an amount to be determined at trial, but totaling not less than $ 5,085,512.35.

### THIRD CLAIM FOR RELIEF
### (CONSTRUCTIVE FRAUD AGAINST WILLIAM B. SMITH AND OLD BSG)

72.     Plaintiffs reallege the foregoing paragraphs 1 through 71 as if fully set forth herein.

73.     As alleged above, Smith's conduct described herein, by Smith's acts and omissions, constituted constructive fraud causing damages to the Plaintiffs.

74.     In full reliance upon the truth of the representations so made by Smith, Plaintiffs on or about March 5, 2014, contracted for the purchase of the shares in the Company held at that time by Smith.  Plaintiffs would not have agreed to enter into the 2014 SPA had they known that Smith's above-referenced representations with respect to the Company were false.

75.     By reason of the foregoing, Smith is liable to Plaintiffs for damages in an amount to be determined at trial, but totaling not less than $ 5,085,512.35.

### FOURTH CLAIM FOR RELIEF
### (BREACH OF FIDUCIARY DUTY AGAINST WILLIAM B. SMITH)

76.     Plaintiffs reallege the foregoing paragraphs 1 through 75 as if fully set forth herein.

77.     As officer, manager, and controlling shareholder in the Company during the Smith Control Period, Smith owed fiduciary duties of loyalty to the Company – now plaintiff Bill Smith Group, Inc. – and to plaintiff BSG Holdings, Inc., the minority and only other shareholder during the Smith Control Period.

78.     Throughout the Smith Control Period, Smith knowingly concealed from BSG Holdings the true financial condition of the Company, and actively prevented BSG Holding personnel from discovering the facts by denying access to the Company's books and, on at least one occasion, access to the Company's premises.

79.     Smith knowingly concealed from BSG Holdings during the Smith Control Period that Smith caused the Company to overpay the rent for its premises during the Smith Control Period in an amount totaling not less than $ 451,355.17 to the landlord, defendant Pumpkino, another entity controlled by defendant William B. Smith, contrary to representations by Smith in paragraph 8.11 of the 2011 SPA.

80.     Smith is legally obligated to account for the profits made by him and his company, Pumpkino, from his conduct in breach of his fiduciary duty to BSG Holdings and the Company, and to cause each to restore such profits to the Company and to compensate BSG Holdings and the Company for the resulting financial injury.

81.     By reason of the foregoing, Smith is liable to Plaintiffs for damages in an amount to be determined at trial, but totaling not less than $ 5,536,867.52.

## FIFTH CLAIM FOR RELIEF
### (NEGLIGENT MISREPRSENTATION AGAINST WILLIAM B. SMITH)

82.     Plaintiffs reallege the foregoing paragraphs 1 through 81 as if fully set forth herein.

83.     As alleged above, Smith, as officer, manager, and controlling shareholder in the Company during the Smith Control Period, Smith owed fiduciary duties of loyalty to plaintiff BSG Holdings, Inc., the minority and only other shareholder during the Smith Control Period.

84.     Throughout the Smith Control Period, Smith concealed from BSG Holdings the true financial condition of the Company, and prevented BSG Holding personnel from discovering the facts by denying access to the Company's books and, on at least one occasion, access to the Company's premises.

85.     Smith concealed from BSG Holdings during the Smith Control Period that Smith caused the Company to overpay the rent for its premises during the Smith Control Period in an

amount totaling not less than $ 451,355.17 to the landlord, defendant Pumpkino, another entity controlled by defendant William B. Smith, contrary to representations by Smith in paragraph 8.11 of the 2011 SPA.

86.     In full reliance upon the truth of the representations so made by Smith, BSG Holdings, on or about March 5, 2014, contracted for the purchase of the shares in the Company held at that time by Smith.  Plaintiffs would not have agreed to enter into the 2014 SPA had they known that Smith's above-referenced representations with respect to the Company were false.

87.     By reason of the foregoing, Smith is liable to Plaintiffs for damages in an amount to be determined at trial, but totaling not less than $ 5,536,867.52.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
## (UNJUST ENRICHMENT
## AGAINST PUMPKINOMCPI, LLC)

88.     Plaintiffs reallege the foregoing paragraphs 1 through 87 as if fully set forth herein.

89.     As alleged herein, at Smith's behest and as part of Smith's scheme to defraud the Plaintiffs, the Company maintained overlapping and incompatible lease and sublease agreements with Pumpkino for the Company's premises, and overpaid Pumpkino for the rent of the Company's premises during the Smith Control Period.

90.     The overpayment constitutes unjust enrichment of Pumpkino at the Company's expense in violation of the common law of the State of New York.

91.     By reason of the foregoing, Pumpkino is liable to Plaintiffs in an amount to be determined at trial, but totaling not less than $ 451,355.17.

WHEREFORE, the Plaintiffs pray for judgment as follows:

a.    Awarding Plaintiffs damages, plus any accrued interest, in an amount to be determined at trial, but totaling:

    (1)    not less than $ 5,085,512.35 on Plaintiffs' first, second, and third causes of action,

    (2)    not less than $ 5,536,867.52 on Plaintiffs' fourth and fifth causes of action, and

    (3)    not less than $ 451,355.17 on Plaintiffs' sixth cause of action;

b.    Awarding Plaintiffs reasonable attorney's fees and costs; and

c.    Awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 15, 2015

MARK BRADFORD, P.C.

Mark Bradford
299 12th Street
Brooklyn, New York 11215-4903
Telephone: (347) 413-3287
Email: mb@markbradfordpc.com

*Attorneys for Plaintiffs*

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK  )
                    )  ss.:
COUNTY OF KINGS     )

I am an attorney for the plaintiffs Bill Smith Group, Inc., BSG Holdings, Inc., and Q2A Media Services Private LTD., in this action and my office is located at Mark Bradford, P.C., 299 12th Street, Brooklyn, New York 11215-4903, which is within the County of Kings. I make this Verification because the plaintiffs are not within the County of Kings.

I have read the foregoing Complaint and know its contents. The Complaint is true to my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe it to be true. The sources of my information and grounds of my belief as to all matters in the foregoing answer not stated to be made upon knowledge are as follows: communications with plaintiffs and general investigation of the documents, facts and circumstances that made this Complaint necessary.

MARK BRADFORD

Sworn to before me this 15th day of December 2015.

SAED H. GHEITH
Notary Public, State of New York
No. 24-01 GH4912894
Qualified in Kings County
Commission Expires Nov. 23, 20

Notary Public

-18-